Argued and submitted July 24, 1981, order vacated January 25, 1982

# RED ROBIN ENTERPRISES, INC.,
dba Red Robin Burger & Spirits
Emporium,
*Petitioner,*

*v.*

# OREGON LIQUOR CONTROL COMMISSION,
*Respondent.*

(CA A20165)

639 P2d 710

Robert C. Laskowski, Portland, argued the cause for petitioner. With him on the brief was Grenley, Rotenberg & Laskowski, Portland.

James E. Mountain, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

THORNTON, J., dissenting.

## VAN HOOMISSEN, J.

Petitioner seeks judicial review of a final order of the Oregon Liquor Control Commission (OLCC) denying petitioner's application for permission to expand its licensed premises. OLCC based its denial on ORS 472.160(1).[1] Petitioner contends that OLCC acted without established criteria for granting or denying its application and that, because one of the factors considered by OLCC was logically unrelated to its denial, OLCC acted without the support of substantial evidence.

Petitioner owns and operates the Red Robin Burger & Spirits Emporium in southwest Portland, where it presently holds a Class A dispenser license. Petitioner applied to OLCC for permission to serve food and drink in a patio area located outside and directly in front of the main entrance to its premises. OLCC's license staff denied petitioner's application because:

"ORS 472.160(1) The granting of the extension in the locality set out in the request is not demanded by public interest or convenience. The staff feels that it is not in the best public interest to require all persons to pass through an area of consumption upon entering your premises. The staff was further concerned with control of patrons in this area and the fact that the area separation would only be portable planters."

Petitioner requested a hearing on the denial. A hearings officer found: (1) ORS 472.160(1) does not apply to a request to alter or remodel licensed premises; (2) nothing in Oregon law or OLCC's rules discourages the sale or consumption of alcohol in a patio or outdoor dining area which is an integral part of a commercial establishment licensed by OLCC; and (3) petitioner's patio area would be used primarily for dining, would not be difficult to "police" and would be adequately enclosed and defined. The hearings officer thereupon recommended that OLCC approve petitioner's application.

---

[1] ORS 472.160(1) provides:

"The commission may refuse any applicant if it has reasonable grounds to believe:

"(1) That there are sufficient licensed premises in the locality set out in the application, or that the granting of a license in the locality set out in the application is not demanded by public interest or convenience."

OLCC's staff excepted to the hearings officer's recommendation, contending that any of the grounds for refusal to *grant* a license found in ORS 472.160 may be used as grounds for denying a request to alter or remodel licensed premises. The staff recommended OLCC "view the approval of a request to alter or remodel as being no different than a grant of a license for purposes of ORS 472.160(1)."

After a hearing, OLCC rejected the hearings officer's recommendation and denied petitioner's application. It based its denial on the grounds that petitioner's request

"is not demanded by public interest or convenience and should be denied because of the widespread exposure of both passersby and patrons to the consumption of alcoholic liquor and the potential, if not actual, attraction of [petitioner's] menu to minors unaccompanied by adults."[2]

Petitioner contends OLCC erred in denying its application, because OLCC based its decision on the ground that the proposed expansion was not demanded by the public interest or convenience. ORS 472.160(1). It argues that: (1) although OAR 845-06-100[3] requires prior OLCC

[2] OLCC's brief states:

"It is apparent that the Commission in this case considered the factors of the licensee's menu, patronization by unaccompanied minors, reduced exposure of minors to drinking environments, premises control, and prevention of public view of empty beverage containers. It appropriately considered on *[sic]* these factors as aspects of the statutory 'public interest or convenience' test which it applied here. It is apparent that the Commission narrowed its focus to the factors of public exposure and the attraction of the petitioner's menu to minors. It considered these two factors in combination in reaching its ultimate conclusion."

[3] OAR 845-06-100 provides in part:

"Retail Malt Beverage, Restaurant and Dispenser licensees must make written request to the License Division and obtain approval from the Commission prior to making any of the following changes:

"(1) Any structural change in the licensed premises.

"(2) Any change in size or location of the bar(s), if any.

"(3) Removal or additional of partitions, other than to accomodate a particular activity on a one-time basis.

"(4) Any change in the principal use of any room or area.

"(5) Any change of 10 percent or more in the number of seats in any dining area or lounge of dispenser-licensed premises.

"* * * * *"

approval of any change in a licensed premises, the rule does not establish standards for granting or denying such approval; (2) absent such standards, OLCC may not withhold approval of petitioner's application on the ground assigned; and (3) application of a "public interest or convenience" test is inconsistent with the policy evidenced by ORS 472.147 that nothing requires the public be shielded from viewing the consumption of alcohol.[4] Petitioner further contends that OLCC erred in basing its denial on the ground that petitioner's menu might attract unaccompanied minors.

OLCC contends that: (1) its order is properly founded upon its statutory mandate[5] and its published rules; (2) petitioner knew in advance the standards by which the application would be judged; and (3) its decision was within the range of discretion allowed by law and is supported by substantial evidence.

■ Petitioner's first contention, that OLCC acted without established criteria for its decision, is supportable only by a niggling reading of ORS chapters 471-472 and OLCC's rules. True, ORS 472.160, which permits OLCC to deny an application that is "not demanded by public interest or convenience," and certain of OLCC's rules, which set forth criteria for granting or denying applications, apply, by their express terms, only to applications for *initial* licenses. However, OLCC has also required by rule that any licensee must apply for approval before any of several changes in the licensed premises are made, including "any change in the principal use of any room or area." OAR 845-06-100.[6] And OAR 845-05-005[7] states that "[t]he purpose of these rules is to set forth the principal criteria which shall

---

[4] ORS 472.147 provides:

"Nothing in this chapter requires any licensed premises to be inclosed by wall, fence or any other means."

[5] ORS chs. 471-472.

[6] *See* n 4 *supra.*

[7] OAR 845-05-005 provides:

"The purpose of these rules is to set forth the principal criteria which shall be considered by the Oregon Liquor Control Commission in granting, denying, modifying, or renewing liquor licenses and related privileges and by the Commission staff in recommending such actions to the Commission. The rules may be used as guidelines to local government in making recommendations to the Commission."

be considered by [OLCC] in granting, denying, modifying or renewing liquor licenses * * * ." By this rule, OLCC has made it clear that it will consider the same criteria in acting on an application to *expand* licensed premises as it does in considering an application for an initial license.

■ Petitioner next claims that, because one of OLCC's stated reasons for denying the application was logically unrelated to the decision, OLCC's order cannot stand. OLCC gave two reasons for its decision that the expansion was not demanded by public interest or convenience. First, it cited "widespread exposure of both passersby and patrons to the consumption of alcoholic liquors."[8]

The patrons of a restaurant serving alcoholic beverages always are potentially exposed to consumption.[9] Exposure of passersby presents another question. All outside dining at licensed premises involves potential exposure of passersby to consumption. OLCC does not specify any special problems it perceives at petitioner's location, which are not found at other licensed premises in the area which it has permitted to serve alcoholic beverages outdoors. OLCC criteria do not include exposure of patrons and passersby to consumption as a factor weighing against an applicant. In fact, ORS 472.147, *supra* n 5, appears to express an opposite policy. If OLCC wants to use the degree of public exposure as a criterion in acting on applications, it should say so in its rules. This is the only way to guard against arbitrary or discriminatory action and to give adequate notice to applicants. *Sun Ray Drive-In Dairy, Inc. v. OLCC,* 16 Or App 63, 517 P2d 289 (1973). OLCC's rules are comprehensive. Applicants are entitled to rely on published criteria as those upon which OLCC will base its decision.

OLCC gave the "potential, if not actual, attraction of applicant's menu to minors unaccompanied by adults" as its second reason for denying petitioner's application. The

---

[8] In its final order OLCC found that:

"5. * * * most patrons entering and leaving the premises would be required to pass through the proposed patio. * * * This proposed patio is in front of Applicant's premises and faces Burnside and Morrison Streets where those thoroughfares intersect at an acute angle near SW 20th Avenue in Portland. It would therefore be in full public view."

[9] Petitioner's Dispenser Class A (DA) license permits it to serve alcoholic beverages both in its bar and in its dining areas.

potential attractiveness to minors of an applicant's menu is nowhere listed as a criterion in OLCC's rules. OAR 845-05-040(3)(c) does provide that unfavorable consideration may be given if it is shown "[t]he applicant's premises will be heavily patronized by minors unaccompanied by adults." If this is what OLCC meant to find, it did so on the basis of a record completely bare of evidentiary support for that proposition. Petitioner's menu was in use prior to the time petitioner sought permission to expand, and petitioner does not propose to change it. Thus, there was no substantial evidence from which OLCC could conclude that applicant's request is not demanded by public interest or convenience and should be denied because of the "potential, if not actual, attraction of applicant's menu to minors unaccompanied by adults." Absent evidence that either (a) the menu was being changed in a manner which would attract more young people, or (b) the physical changes being made on the premises would themselves be more likely to attract young people, OLCC had no substantial evidence to justify its ruling.

We hold that OLCC based its decision on a previously unannounced criterion and on an assertion not supported by substantial evidence in the record. We therefore vacate OLCC's order and remand to the agency for further proceedings. ORS 183.482(8)(c).

**THORNTON, J.,** dissenting.

The majority reverses the Commission's order because:

"OLCC based its decision on a previously unannounced criterion [exposure of the public to consumption of liquor] and on an 'assertion not supported by substantial evidence in the record."

For reasons which follow, I cannot agree.

The majority opinion in my view is based on a misinterpretation of the findings and conclusions, as well as on an erroneous interpretation of the Oregon Liquor Control Act.

What the majority opinion either fails to recognize or disregards is that, as shown by the findings and conclusions, the Commission considered the attractiveness of the

petitioner's menu to minors *in conjunction with* the additional factor that its proposed open air patio would expose passers-by (including juveniles) and patrons (including unaccompanied juvenile patrons) to the view of the consumption of alcoholic liquor.

As to the point advanced by the majority that "OLCC based its decision on a previously unannounced criterion," that is specious. Contrary to the majority, the Commission did not base its decision on the fact that the public would be exposed to the consumption of alcoholic liquor. The order expressly recognizes that there is no such restriction either by law or regulation. The law and the long-standing Commission interpretation is directly to the contrary. *See* ORS 472.147. Petitioner in fact presently has a license to serve liquor in the open at a different location. What the Commission's order and the record of the hearing before the Commission show is that the Commission considered the attractiveness of the petitioner's menu (which appeals to minors) together with the fact that petitioner's proposed outdoor drinking area would expose passers-by (including juveniles) and patrons (including juvenile patrons) to the open consumption of alcoholic beverages. As explained below, this has always been a basic tenet of the Oregon Liquor Control Act and the regulations issued by the OLCC under that law. *See* ORS 471.030(c); 472.030.

OAR 845-06-035(2)(b) provides in part:
"No licensee * * * shall permit a minor, whether or not accompanied by a parent or guardian:
"* * * * *
"(b) to enter or remain * * * upon a portion of a licensed premises that has been posted by the Commission as provided by Rule 845-06-090 as being prohibited for the use of minors * * *."

Thus, the Commission did not, in my view, err in denying petitioner's application for extension of its premises on the ground stated in the order.

Lastly, the majority objects to the Commission's conclusion that petitioner's menu would attract minors unaccompanied by adults and terms it "an assertion unsupported by the record." I find this point also untenable. The

Commission's finding was that "[a]pplicant's menu features primarily hamburgers and doubtless attracts a substantial number of minors unaccompanied by adults." I think a regulatory body, such as the Commission, as well as this court, is fully aware and can safely assume that minors are very fond of hamburgers and frequently go in groups to hamburger places unaccompanied by adults. This certainly does not require that evidence be adduced to establish this fact of common knowledge, the absence of which is made a ground for overturning a decision of an administrative agency by the majority.

The Commission's rules provide that requests for licenses shall be evaluated in the light of the applicant's menu, the potential for patronage by minors unaccompanied by their parents, the potential exposure of minors to a drinking atmosphere and other factors. OAR 845-05-005 *et seq.* The Commission's finding that patrons entering petitioner's establishment would have to pass through the proposed outdoor dining and drinking area and that petitioner's hamburger menu would attract minors unaccompanied by parents was a rational basis for a conclusion that approval of petitioner's application would contravene the public policy and Commission policy of reducing the exposure of minors to drinking environments. ORS 471.030; 472.030. My review of the applicable statutes, regulations and decisions of this court satisfies me that the OLCC acted according to law and pursuant to its statutory authority in denying petitioner's application for the remodeling of its licensed premises.